**Smith v.**
**Denihan, Registrar, Ohio Bureau**
**of Motor Vehicles**
*[Cite as 4 AOA 438]*

*Case No. 89AP-623*
*Franklin County, (10th)*
*Decided June 28, 1990*

*Ruppert, Bronson, Chicarelli & Smith Co., L.P.A., and Mr. James D. Ruppert, for Appellees.*

*Mr. Anthony J. Celebrezze, Jr., Attorney General, and Mr. Patrick A. Devine, for Appellants.*

REILLY, P.J.

This is an appeal from a judgment of the Franklin County Common Pleas Court declaring a provision of Am. Sub. S.B. No. 1 unconstitutional under the Contract Clause of both the United States and Ohio constitutions

Defendants advance the following assignments of error:

"1.) The trial court erred in determining the deputy registrar plaintiffs had a contract with the state defendants after November 28, 1988, which granted the plaintiffs a $1.50 per transaction from January 1, 1989 to June 30, 1989.

"2.) The trial court erred in finding the pertinent provisions of Am. Sub. S.B. No. 1 void as unconstitutional under Section 10, Article I of the United States Constitution and Section 28, Article II of the Ohio Constitution.

"a) The trial court erred in relying upon the plaintiff's affidavits to determine the material question of 'substantial impairment' of an alleged contractual obligation.

"b) The trial court erred in substituting its judgment for that of the legislature in finding the pertinent provisions of Am. Sub. S.B. No. 1 to be unreasonable and inappropriate."

This is a class action brought on behalf of 267 Ohio deputy registrars. In Ohio, deputy registrars process motor vehicle licenses and registrations in the various counties of the state. Plaintiffs David Smith and Ray Martin served as deputy registrars for the Ohio Bureau of Motor Vehicles for Butler and Clark counties, respectively. Defendant William M. Denihan is the Director of the Ohio Department of Highway Safety. Defendant Michael J. McCullion is the Registrar of the Ohio Bureau of Motor Vehicles.

The deputy registrars instituted the present action in November 1988. Originally, they challenged an executive order promulgated by the Governor on July 11, 1988. This order provided for certain reforms in the motor vehicle license registration system. These reforms included prohibition on awards of deputy registrar contracts to elected or appointed officials, a requirement that the duration of such contracts be for two years, and a provision for the assessment of a ten cent fee for certain transaction processed by a deputy, such fee payable to the Ohio Bureau of Motor Vehicles. Because the deputy registrars felt this order would adversely affect their existing contractual rights, they commenced an action in the Franklin County Common Pleas Court seeking injunctive and declaratory relief. They asserted that the Governor had no authority to change their existing contracts by executive order.

During the pending action, the General Assembly enacted Am Sub. S.B. No. 1 as an emergency measure, effective November 28, 1988. This measure the question of whether the executive order was valid because the General Assembly enacted many of the same reforms.

A large part of the legislative reform was a new mail-in registration system; whereby, license renewals could be accomplished by mailing in various documents and fees, instead of having to present such items at a deputy registrar office. The above-mentioned fee was also included in the measure. Under the new law, deputy registrars were to pay ten cents to the new central registration fund on each registration or renewal processed. This fund would presumably offset some of the costs of the new mail-in system. Considering the effect of the new law, the deputy registrars amended their complaint in the trial court to assert that certain provisions of Am. Sub. S.B. No. 1 were unconstitutional under the Contract Clause of both the United States and Ohio constitutions

On March 21, 1989, the trial court held a hearing on motions submitted by the parties. Significantly, the court considered arguments of counsel on the issue of whether the fee in Am. Sub. S.B. No. 1 was an unconstitutional impairment of

contract under the Contract Clause. Because the parties agreed to stipulate the evidence, they presented no witnesses. However, both parties offered supplemental affidavits which the trial court apparently admitted. Defense counsel objected to plaintiffs' affidavit, because the facts had been stipulated. The challenged affidavit provided information regarding the extent to which the new law would reduce the deputy registrars' profits.

The trial court rendered its decision on May 2, 1989. The court denied the request for injunctive relief because, even if the deputy registrars' contracts were impaired, they had an adequate remedy at law by an action for money damages. However, the trial court granted the request for declaratory relief, holding that Am. Sub. S.B. No. 1 violated the Contract Clause and was therefore unconstitutional.

In this regard, the court found that the deputy registrars had contracts which guaranteed a $1.50 fee per transaction. The court also found that Am. Sub. S.B. No. 1 impaired these contracts because it obligated them to pay ten cents of their guaranteed fee back to the state. Further, the court found this impairment substantial, especially since the deputy registrars relied on the $1.50 fee as compensation for their services. Finally, the court found that the impairment was not reasonable and appropriate under the circumstances. The court reasoned that, although the state had a legitimate purpose in trying to make the vehicle registration system more convenient and simple for the public, the state's need for revenue to subsidize the main-in system did not justify exaction of a fee from the deputy registrars. The court found that the state had a less burdensome means available to effectuate the need for revenue by simply raising the public transaction fee ten cents. Hence, the public would bear the cost of the main-in system instead of the deputy registrars. Judgment was entered for the deputy registrars and defendants appealed to this court.

In the first assignment of error, defendants contend that the trial court erred in finding the deputy registrars had a contract which included a $1.50 fee. Defendants assert that the contracts were terminable-at-will and the state could alter the fee with impunity. Defendants also argue that the deputy registrars' contracts did not provide for a guaranteed fee at all. Further, defendants maintain that the contracts in question were entered into after the effective date of the act and the act did not retroactively impair the existing contracts.

To address these arguments, it is first necessary to consider the contractual process of the parties. As the stipulations establish, each deputy registrar executed a standard contract in accordance with R.C. 4503.03. This statute provides, in pertinent part:

"(A) The registrar of motor vehicles may designate the county auditor in each county a deputy registrar and shall contract with one or more other persons in each county to act as deputy registrars. * * *

"* * *

"(C) With approval of the director of highway safety, the registrar shall adopt rules governing the terms of the contract between the registrar and each deputy registrar. * * *"

After providing for several mandatory rules, the statute further states:

"(D) Unless otherwise terminated, contracts with deputy registrars shall expire on the thirtieth day of June each year * * *. The auditor of state may examine the accounts, reports, systems, and other data of each deputy registrar at least every two years. The registrar shall, with approval of the director, immediately remove a deputy who violates * * * a term of his contract with the registrar. * * * Upon removal of a deputy registrar for contract violation, the auditor of state shall examine the accounts, records, systems, and other data of the deputy registrar so removed."

Pursuant to this statute, the deputy registrars executed what is entitled a "Deputy Registrar Agreement with the Bureau of Motor Vehicles State of Ohio." This agreement states, in pertinent part:

"This Agreement is made this ___ day of ___, 1987, by and between the Ohio Bureau of Motor Vehicles, Department of Highway Safety, a branch of the State of Ohio, Columbus, Ohio and ___, ___, County, Ohio.

*"WITNESS*

"WHEREAS, the Bureau of Motor Vehicles wishes to appoint as a Deputy Registrar in ___ County, Ohio and;

"WHEREAS, the Deputy Registrar agrees to accept and be bound by the terms and conditions of this Agreement and to perform the duties and responsibilities, all as set forth in this Agreement.

*"NOW, THEREFORE, IT IS AGREED*
*AS FOLLOWS*
"I. *TERM*

"The term of this Agreement shall be from July 1, 1987 through June 30, 1988, unless otherwise terminated as provided for herein."

After describing terms concerning such things as daily procedures and duties, nonassignability and good faith performance, the contract provides:

"IX. *WRITTEN NOTICE OF TERMINATION*

"The deputy registrar shall not terminate the appointment granted by this Agreement without giving written notice sixty (60) days in advance to the Registrar of Motor Vehicles. The deputy registrar further agrees that he/she shall not cease to conduct his/her business until adequate arrangements have been made by the Registrar, and the Registrar so notifies the deputy registrar in writing.

"X. *REVOCATION OF AGREEMENT*

"This Agreement may be terminated and the appointment granted herein may be revoked by the Registrar in the event of the breach of any of the covenants herein. A breach or violation of any of the duties set forth in Sections II through VI of this Agreement shall constitute a breach hereof. The Registrar may also terminate this Agreement and the appointment granted herein if, in the opinion of the Registrar, the deputy registrar has engaged in any conduct unbecoming to one representing the state or any conduct which is inconsistent with the efficient operation of the agency office."

The agreement also contains a provision requiring amendment only by written instrument signed by both parties, a provision that the agreement shall be governed and construed in accordance with the law of the State of Ohio, and a provision that the agreement constitutes the entire agreement between the parties.

Further, each deputy registrar was required to sign a "Certification of the Rules of the Registrar and Contract," certifying that the deputy had "* * * reviewed in detail, the Rules of the Registrar and the Contract Accepting Appointment as Deputy Registrar * * *" and that the deputy understood "* * * the conditions imposed by the Registrar of Motor Vehicles pursuant to Section 4503.01, 4503.03 and 4503.10 of the Ohio Revised Code."

It is undisputed that, as of July 1, 1987, the deputy registrars executed these valid and binding contracts, and that all the essential elements necessary for the creation of a contractual relationship were present.

Defendants, however, argue that the Registrar could terminate the contract at will. Yet, there is no indication that the Registrar can terminate the contract at his discretion. The contract expressly states that it is for a term of one year. It provides that it expires on June 30. Furthermore, the contract states that it may be terminated for specific reasons. Contrary to defendant's contention, the phrase "unless otherwise terminated" lends no support to defendants' arguments. This provision means that, unless the contract is terminated, the contract is for one year. Thus, the contract can be terminated, for instance, for breach of a term. This would shorten the duration of the contract if there was a breach and termination. We cannot reasonably construe "unless otherwise terminated" to mean that the Registrar can terminate for any reason. If that were true, then there would have been no need to include provision for terminations such as the one for termination as a consequence of breach, Hence, the deputy registrars had one-year contracts as of July 1, 1987 that were not terminable-at-will.

Defendants also contend that, even if there were a contract, it did not include a guarantee of $1.50 per transaction. The contract does not expressly mention this fee. It states that deputy registrars shall not charge any fee in excess of that which is provided for in the Revised Code.

Nevertheless, we find that the trial court correctly found that the contract included the $1.50 fee. Although the contract does not expressly include a certain fee, the Revised Code does. R.C. 4503.10[1] provides in pertinent part:

"(B)[2] * * * *Each deputy registrar shall be allowed a fee of one dollar and fifty cents, for each application received by him*, which shall be in addition to the license fee and shall be for the purpose of compensating the deputy registrar for his services and the services of such assistants, clerks, stenographers, and other employees, and such office and rental expenses, as may be necessary for the proper discharge of his duties in the receiving of applications and issuing of licenses."

Relying on contract clause cases holding that there is a presumption that a statute is not intended to create private contractual rights, defendants argue that the statutory fees are not incorporated in the deputy registrars' contracts. See *e.g.*, *National R.R. Corp.* v. *Atchison, Topeka Co.* (1985), 470 U.S. 451, 466-467. See, also, *Keefe* v. *Clark* (1943), 322 U.S. 393. Furthermore, defendants maintain that there is no vested right in an existing statute. *State ex rel. Bouse, Jr.*, v. *Cickelli* (1956), 165 Ohio St. 191, 195.

The deputy registrars do not claim that, once the General Assembly enacted the statutory fee, it was forever bound not to change it. Furthermore, they do not merely claims that they relied on the existence of the statute. Rather, their claim is that the fee was incorporated into their contract as an integral term. They maintain that the reasonable interpretation of their agreement and

the reasonable expectation of the parties was that, for the duration of their contract, the fee was set at $1.50 per transaction.

The trial court relied on *Indiana ex rel. Anderson*, v. *Brand* (1938), 303 U.S. 95, as support for the conclusion that the statutory fee was part of the deputy registrars' contract. In *Brand*, an Indiana teacher challenged the state's cancellation of her employment contract. The teacher contended that a "just cause" provision of the state's Teacher Tenure Law was incorporated into her contract and that the state could not impair her contract by repeal of the law and subsequent cancellation of her contract, without a finding of just cause. The United States Supreme Court agreed, and wrote:

"* * * The principle function of a legislative body is not to make contracts but to make laws which declare the policy of the state and are subject to repeal when a subsequent legislature shall determine to alter the policy. Nevertheless, it is established that a legislative enactment may contain provisions which, when accepted as the basis of action by individuals, become contracts between them and the State or its subdivisions within the protection of Art. I, §10." (Footnote omitted.) *Id.* at 100.

The Court noted that the teacher's written contract included a term that all provisions of the Teacher's Tenure Law shall be in full force and effect in the contract. The Tenure Law included a provision for cancellation only for specified reasons. In considering whether a contractual relationship existed between the parties in this regard, the Court noted that the basic inquiry focuses on the terms of the statute. Relying heavily on the fact that the tenure act frequently used the word "contract," and that prior state law had held that the teacher's right to continued employment was contractual, the Court found that the statute's terms were included in the contract. Compare this case with *Dodge* v. *Bd. of Education* (1937), 302 U.S. 74, cited in *Lawrence* v. *Edwin Shaw Hosp.* (1986), 34 Ohio App. 3d 137 (holding that classified civil service employees had no contract with the state) and *Phelps* v. *Bd. of Education* (1937), 300 U.S. 319. See, generally, Hale, The Supreme Court and the Contract Clause: II (1944), 57 Harv. L. Rev. 621, 663-670 and Ziegel, Legislative Contracts (1939), 13 U. Cinc. L. Rev. 479. See, also, *New Jersey* v. *Yard* (1887), 95 U.S. 104.

The deputies contend that it is long established that "* * * 'contracts must be expounded according to the laws in force at the time they are made, and the parties are as much bound by a provision contained in a law as if that provision had been inserted in and formed a part of the contract.' * * *" *Jewett* v. *Railway* (1878), 34 Ohio St. 601, 607.

In *Middletown* v. *Ferguson* (1986), 25 Ohio St. 3d 71, the Supreme Court applied the principle cited by the deputy registrars to incorporate a special assessment term into a contract between Middletown and the Ohio Department of Transportation ("ODOT"). In this case, Middletown had contracted with ODOT to improve a road in the city. To finance the project, the city assessed the properties of abutting owners. Thereafter, the abutting owners initiated a referendum to repeal all measures relating to the road project. Eventually, the city brought a bond validation action pursuant to R.C. 133.71, seeking to establish its authority to issue bonds for the project. At trial, the city argued that the referendum as passed impaired its contract with ODOT. The Supreme Court agreed. The court held that, even though the contract between the city and ODOT did not mention the assessment and even though the city could pay for the contract out of its general revenues, the contract incorporated the provision for the special assessment. The court said that repeal of the special assessment measure "entirely frustrated the city's reasonable expectations." *Id.* at 78.

Thus, the trial court in this case was correct in construing the contract as including the fee. The contract makes reference to the statute in several ways. Moreover, the deputy registrars had to certify that they were aware of the applicable statutes. And, they were directed by the contract to charge no fee beyond that which was allowed in the statute. Further, the contract was to be construed according to Ohio law.

Given these facts, it is reasonable to conclude that the parties reasonably expected that the deputy registrars would be compensated in the amount as provided in the statute. It is unreasonable to assume that the deputy registrars were not entitled to expect any compensation. Thus, if they entitled to some compensation, where else would the parties look to determine the amount? The statute clearly states that the deputy registrars shall be allowed the fee. In sum, it is reasonable to expect and conclude that the fee was part of the contract.

It is also reasonable to conclude that the fee was fixed at $1.50 for the term of the contract. Defendants contend that the statute does not expressly provide this. Nevertheless, the statute says

$1.50. It does not say up to $1.50. It does not say that the fee is subject to change.

Defendants further maintain that, even if there were an enforceable contract at $1.50 per transaction under prior law, it is of no consequence because the deputy registrars entered into the contracts in this case after the effective date of the act. Therefore, defendants contend that the contracts are governed by the new $1.40 fee and the assessment of ten cents.

The stipulations include certain standard addendum contracts executed by the deputy registrars. Apparently, each year that the original contract was about to expire in June, the Registrar sent out one-page, addendum agreements to renew or continue the original contracts.[3]

As evident in the stipulations, in June 1988, the Registrar sent out a standard addendum. This particular addendum also included a term providing that the original contract was to remain the same and in full force and effect. However, the addendum indicated that the contract was extended only until December 31, 1988 instead of June 30, as provided in the original contract and R.C. 4503.03.

Apparently, at this time the deputy registrars knew that efforts were being made to decrease their fee. Hence, defendants argue that the deputy registrars could not have had any justifiable expectation to receive the full $1.50. Defendants also argue that, since the deputy registrars signed the addendum agreements on December 10 to continue their contracts, those new addendums were subject to the $1.40 fee of Am. Sub. S.B. No. 1, which defendants claim was effective on January 1, 1989.[4] Defendants also contend that the General Assembly did not intend to make the new fee structure applicable to existing contracts. They argue that the General Assembly only intended that the new fees were to apply to future contracts, *i.e.*, in the present case, those executed in December and commencing on January 1.

First, we must note that, contrary to the deputy registrars' contention, there is no indication that the deputy registrars signed the contracts under duress or that they signed under protest. They contend that at renewal they already had initiated their lawsuit challenging the Governor's executive order. They claim that such action somehow preserved their rights. These arguments are not well-taken.

Nevertheless, defendants' arguments are not persuasive either. R.C. 4503.03 expressly states that the deputy registrars' contracts shall expire on June 30. Thus, the addendum contracts executed in July 1988 were in contravention of statute. Defendants argue that if this is so then it must be true that the deputy registrars have no contracts. We find, however, that this term was unenforceable, yet severable from the contract. Hence, by operation of law, the contracts were to expire on June 30, 1989.

The addendums, executed in December 1988, reinforce this conclusion and state, in pertinent part:

"The State of Ohio, Department of Highway Safety, Bureau of Motor Vehicles and ___ hereby agree that the CONTRACT entered into on the 1st day of July, 1987, wherein the said ___ accepted appointment as a deputy registrar for the Bureau of Motor Vehicles in the County of ___ expired by its terms and by operation of law on June 30, 1988. The parties further agree that the Registrar of Motor Vehicles wishes to reappoint said deputy registrar for the period commencing July 1, 1988 and ending June 30, 1989. Therefore, the last paragraph of said CONTRACT concerning the effective dates is hereby extended beyond the June 30, 1988 date, and shall continue until June 30, 1989.

"This addendum replaces and supersedes the Contract Addendum previously executed by the parties. Those items not specifically addressed in the above amendment but which appear in the original contract remain the same and in full force and effect.

"It is hereby understood that this addendum is made a part of the original CONTRACT, and is of the same force and effect as such original CONTRACT dated July 1, 1987.

"It is also understood that the amendment contained herein is the only amendment to the original CONTRACT and no other changes, provisions or terms exist except as expressly referred to in this instrument."

Although this addendum, executed after the new fee went into effect, refers to replacing and superseding the July 1988 addendum, it also states that the parties agree that the Registrar is reappointing the deputy registrars from July 1, 1988 to June 30, 1989. Further, it refers to the last paragraph of the original 1987 contract concerning effective dates. This addendum states that the original contract is hereby extended. There is no statement that the deputy registrars take the contract subject to the new fee. The addendum expressly states that, unless specifically mentioned, the terms of the *original* contract remain in effect. As indicated above, one of those terms was the $1.50 fee. Considered from the time of renewal, the

fee was an integral term of the contract. Viewed from the time of this retroactive addendum, the fee was part of that original contract. Hence, as of June 30, 1988, the deputies had a contract for a $1.50 fee which extended until June 30, 1989. The trial court did not err in so finding.

The first assignment of error is not well-taken.

In the second assignment of error, defendants asserts that the trial court erred in finding Am. Sub. S.B. No. 1 unconstitutional under the Contract Clause of both the United States and Ohio constitutions.

Sections 10, Article I, United States Constitution provides, in pertinent part:

"No State shall * * * pass any * * * law impairing the obligation of contracts * * *."

Section 28, Article II, Ohio Constitution, likewise provides in pertinent part:

"The general assembly shall have no power to pass retroactive laws, or laws impairing the obligation of contracts. * * *"

As defendants note, these provisions "* * * must be accommodated to the inherent police power of the State 'to safeguard the vital interest of its people.' * * **" Energy Reserves, Inc. v. Kansas Power & Light Co. (1983), 459 U.S. 400, 410. Accordingly, the courts have applied a three-step balancing test to examine legislation under the Contract Clause. The first step is to determine "* * * 'whether the state law has, in fact, operated as a substantial impairment of a contractual relationship.' * * **" Id. at 411. If a substantial impairment is found, then the second step is to determine whether the state has a significant and legitimate public purpose for the legislation. Id. at 412. If there is such a purpose, then the last step in to determine "* * * whether adjustment of 'the rights and responsibilities of contracting parties [is based] upon reasonable conditions and [is] of a character appropriate to the public purpose justifying [the legislation's] adoption.' * * **" Id. at 412 (quoting United States Trust Co. v. New Jersey [1977], 431 U.S. 1, 22).

The trial court applied the foregoing test and held the new fee unconstitutional as applied to the deputy registrar's existing contracts. In any event, this case involves a claim that Am. Sub. S.B. No. 1 impairs contracts entered into before passage of the law. Necessarily, this involves a claim that the statute is being applied retroactively.

As recognized by the Ohio Supreme Court, our law abhors retroactive legislation. Van Fossen v. Babcock & Wilcox (1988), 36 Ohio St. 3d 100. Indeed, our constitution contains a strong prohibition against retroactive legislation in Section 28, Article II. Moreover, the Revised Code also echoes this sentiment. R.C. 1.48 succinctly provides:

"A statute is presumed to be prospective in its operation unless expressly made retrospective."

The Supreme Court has emphasized that the threshold question regarding retroactive legislation is whether the legislation in fact was intended to be retroactive. Ohio Citizens Bank v. Mills (1989), 45 Ohio St. 3d 153; Warren Cty. Bd. of Commrs. v. Lebanon (1989), 43 Ohio St. 3d 188; State, ex rel. Battin, v. Bush (1988), 40 Ohio St. 3d 236; Van Fossen v. Bobcock & Wilcox, supra; Kiser v. Coleman (1986), 28 Ohio St. 3d 259. The rule is that a statute should be reasonably interpreted to have a prospective operation unless the statute clearly indicates otherwise. Van Fossen v. Babcock & Wilcox, supra.

Am. Sub. S.B. No. 1 was passed as emergency legislation, effective upon signing by the Governor. The Governor signed the measure on November 28, 1988. The fee in question was included in an amendment to R.C. 4305.10. The act itself contains two identical versions of R.C. 4305.10.[5]

Section 4 of the act provides: "That all existing versions of sections 4503.10 and 4503.102 of the Revised Code are hereby repealed." Section 5 provides: "Sections 3 and 4 of this act shall take effect October 9, 1989." Section 3 includes that act's second version of R.C. 4503.10. Apparently, the first version was included in Am. Sub. H.B. No. 373.

The version of R.C. 4503.10 in Section 3 makes several changes to R.C. 4503.10. In particular, division (C)(2) provides:

"In addition to the license fee tax, a fee of ten cents shall be made for each application for registration and registration renewal notice received by a deputy registrar, or by the registrar under division (G) of this section. The fee shall be transmitted to the registrar with the license tax in the manner provided in this section and paid to the credit of the central registration fund established by section 4501.14 of the Revised Code."

Division (D) of this section is amended to read in pertinent part: "Each deputy registrar shall be allowed a fee of one dollar and forty cents for each application for registration and registration renewal notice * * *." Hence, this amendment simply changed the $1.50 figure under the prior statute of $1.40.

It is apparent that there is no clear legislative intent that the provision is to be applied to existing deputy registrar contracts. For there is no language in the act which clearly would indicate

that the General Assembly intended the new fee structure to be applicable to existing contracts. The legislature could have easily included such language. For instance, Section 8 of the act provides that the new proscriptions on political contributions do "* * * not apply to any contribution made to any political party, or to any candidate * * * or to the campaign committee or any such candidate, prior to the effective date of this act." This would indicate a clear intent to make those provisions prospective. There is no such clear language to make the new fee structure retrospective as to existing deputy registrar contracts.

That the statute was enacted as emergency legislation does not change the analysis herein. In *State, ex rel. Battin, supra*, the relator's guardian *ad litem* instituted an action in mandamus to compel a county auditor to issue the relator his paycheck. The relator had been elected to a four-year term as county commissioner. Unfortunately, the relator was seriously injured in an automobile accident which rendered him incapacitated. While he was incapacitated, the General Assembly passed and emergency measure changing the statute relating to vacancy of office. The former statute required that the county officer was physically absent from the county due to sickness or injury. The new statute provided that if a county officer failed to perform his duties for ninety consecutive days, his office shall be deemed vacant.

The *Battin* court applied R.C. 1.48 and concluded that the emergency legislation was intended to have prospective application because it was phrased in the present tense and contained no express provision that it should be applied retroactively. *Id.*

Thus, it is reasonable to conclude that the new fee structure of Am. Sub. S.B. No. 1 was intended to be prospective only. Thus, it would only apply to new contracts. We have previously stated that the contracts in this case were not new contracts, but continuations of the original contracts containing the $1.50 fee.

Furthermore, R.C. 1.58 provides:

"(A) The reenactment, amendment, or repeal of a statute does not, except as provided in division (B) of this section:

"(1) Affect the prior operation of the statute or any prior action taken thereunder;

"(2) Affect any validation, cure, right, privilege, obligation, or liability previously acquired, accrued, accorded, in incurred thereunder;

"(3) Affect any violation thereof or penalty forfeiture, or punishment incurred in respect thereto, prior to the amendment or repeal;

"(4) Affect any investigation, proceeding, or remedy in respect of any such privilege, obligation, liability, penalty, forfeiture, or punishment; and the investigation, proceeding, or remedy may be instituted, continued, or enforced, and the penalty, forfeiture, or punishment imposed, as if the statute had not been repealed or amended.

"(B) If the penalty, forfeiture, or punishment for any offense is reduced by a reenactment or amendment of a statute, the penalty, forfeiture, or punishment, if not already imposed, shall be imposed according to the statute as amended."

Hence, the deputy registrars are entitled to claim the benefit of the old fee structure. See *Gregory* v. *Flowers* (1972), 32 Ohio St. 2d 48; *Nokes* v. *Nokes* (1976), 47 Ohio St. 2d 1; *Duffy* v. *Heffernan* (1983), 9 Ohio App. 3d 273; *Horvath* v. *Connor* (1983), 13 Ohio App. 3d 214; and *Coulter Pontiac, Inc.* v. *Pontiac Motor Div.* (1981), 4 Ohio App. 3d 169.

For the foregoing reasons, it is not necessary to discuss the merits of the trial court's application of the Contract Clause. Nevertheless, for the purpose of passing on defendants' assignments of error, we will address defendants' remaining arguments.

Defendants maintain that the trial court erred in admitting plaintiffs' affidavits over defendants' objection. Defendants contend that the court should not have done this because the evidence was stipulated. Defendants emphasize that the trial court explicitly mentioned the affidavit in its decision as evidence of a 20 to 30 percent loss-of-profit for the deputy registrars.

Nevertheless, even if this were error, defendants were not prejudiced. The Contract Clause test for substantial impairment is not a mathematical one. *Middletown* v. *Ferguson, supra*, at 77 (quoting *United States Trust Co., supra*, at 21). Instead, it focuses on the disruption of reasonable expectations and the severity of the impairment. *Id.* at 77. Further, "* * * where a party has relied on an obligation which is impaired by legislation, as when the legislation impairs the express terms of a contract, * * *" the impairment is especially severe. *Id.* at 77.

In this case, the statute itself shows that the deputy registrars were to lose one-fifteenth of their guaranteed fee. As indicated above, the fee was obviously relied upon a compensation for services. Indeed, R.C. 4305.10 expressly states that the fee was to compensate the deputy registrars for their

services. Therefore, the trial court was correct in finding a substantial impairment on the facts of this case. For even if the affidavit was excluded from consideration, a substantial impairment would be evident. Thus, defendants were not prejudiced.

Defendants also argue that the trial court erred in substituting its judgment for that of the General Assembly in finding Am. Sub. S.B. No. 1 inappropriate and unreasonable. Defendants' challenge is to the trial court's application of the third step in the Contract Clause test.

A law substantially impairing an obligation of contract may be constitutional if it is reasonable and necessary to serve an important public purpose. *Middletown* v. *Ferguson, supra,* at 79. The stricter scrutiny included in this step of the test does not involve the usual great deference afforded to the legislative enactments. Nevertheless, the test had been applied in cases in which the state is a party to the contract. Though commentators have criticized this test for state contracts as turning the clause on its head, Merrill, *Public Contracts, Private Contracts, and the Transformation of Constitutional Order* (1986-87), 37 Case W.L. Rev. 589, 609, the test has been consistently applied in such a manner by federal and Ohio authorities. See, also, *United States Trust, supra; Middletown, supra.*

Considering the facts of this case, we do not find that the trial court misapplied this step of the test. This was a case involving a public contract. The state impaired the contract by exacting a fee from the deputy registrars instead of raising the fee paid by the public.[6] Defendants have not offered any sufficient reason why it was necessary to take ten cents from the deputy registrars. Hence, we cannot find error.

The second assignment of error is not well-taken.

Defendants' assignments of error are overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

WHITESIDE and MARTIN, JJ., concur.

MARTIN, J., of the Fairfield County Court of Common Pleas, sitting by assignment in the Tenth Appellate District.

---

[1] Am. Sub. S.B. No. 1 amended this statute, which brought about the present action. The amendment reduced the former

fee to $1.40 but added a fee of ten cents which was to be paid to the central registration fund. The net result after this amendment is that the public would still pay $1.50 per transaction. However, the deputy would only get to keep $1.40 because ten cents would have to be sent to the central registration fund for use by the state of Ohio.

[2] Editor's note: So in the orignal. R.C. 4503.10(D) is the subsection quoted.

[3] Some addendums include new terms, such as a term prohibiting the display of signs. This only reinforces the above analysis that the agreements were not terminable-at-will. The Registrar obviously felt that in order to change the contract, new terms would have to be added at the time of renewal.

[4] Actually, defendants realize that the emergency measure became effective when signed. But, they point out that the ten cent fees were not paid until the beginning of January 1989.

[5] Editor's note: So in the original. R.C. 4503.10 is the section under discussion.

[6] Am. Sub. S.B. No. 1 includes such amendments to fees paid by the public. See, *e.g.,* R.C. 4503.182 as amended. In regard to these fees, the legislature simply raised the public fee ten cents and made it payable to the fund. There is no explanation why this could not be done with the fee in question.