SHIMKO, Appellant,

v.

LOBE et al., Appellees.

[Cite as *Shimko v. Lobe* (1997), 124 Ohio App.3d 336.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 96APE11–1555.

Decided Nov. 25, 1997.

338

*Timothy A. Shimko & Associates, Timothy A. Shimko* and *Janet I. Stich,* for appellant.

*George F. Lonjak,* for appellee Thomas G. Lobe.

*Jones, Day, Reavis & Pogue* and *Fordham E. Huffman;* and *K. Ann Zimmerman,* for appellee Cleveland Bar Association.

*Eugene P. Whetzel,* for appellee Columbus Bar Association.

*Per Curiam.*

Plaintiff-appellant, Timothy A. Shimko, appeals from a judgment of the Franklin County Court of Common Pleas in favor of defendants-appellees, Thomas G. Lobe, the Cleveland Bar Association, and the Columbus Bar Association. Appellant sets forth the following assignment of error:

"The trial court erred in holding that Disciplinary Rule 2–107(B) is constitutional, as DR 2–107(B) violates the Ohio Constitution (Art. I, § 1; Art. I § 2; Art. I, § 5; Art. I, § 16), and the 5th, 7th and 14th Amendments to the Constitution of the United States of America."

It has been stipulated that appellant and appellee, Thomas G. Lobe ("Lobe"), are attorneys licensed and admitted to the practice of law in the state of Ohio. On September 19, 1995, Lobe demanded that the Cleveland Bar Association ("Cleveland Bar"), pursuant to Ohio Code of Professional Responsibility Disciplinary Rule 2–107(B), arbitrate several fee disputes between the two. Appellant objected to arbitration on the grounds that DR 2–107(B) violated several provisions of the Ohio and United States Constitutions. On December 8, 1995, the Cleveland Bar informed Lobe and appellant that it was accepting jurisdiction over several of Lobe's contractual disputes with appellant. Thereafter, on February 14, 1996, Lobe filed a petition with the Cleveland Bar, wherein Lobe demanded that the claims be set for mandatory and binding arbitration.

Appellant commenced the instant action in the Franklin County Court of Common Pleas, seeking a declaration that DR 2–107(B) is unconstitutional. Cross-motions for summary judgment were filed by the parties upon stipulated facts. The trial court determined that DR 2–107(B) did not violate any of the provisions of the Ohio and United States Constitutions and granted appellees' motions for summary judgment. Appellant appeals to this court from the judgment of the Franklin County Court of Common Pleas.

DR 2–107 provides:

"(A) Division of fees by lawyers who are not in the same firm may be made only with the prior consent of the client and if all of the following apply:

"(1) The division is in proportion to the services performed by each lawyer or, if by written agreement with the client, all lawyers assume responsibility of the representation;

"(2) The terms of the division and the identity of all lawyers sharing in the fee are disclosed in writing to the client;

"(3) The total fee is reasonable.

"(B) *In cases of dispute between lawyers arising under this rule, fees shall be divided in accordance with mediation or arbitration provided by a local bar association. Disputes that cannot be resolved by a local bar association shall be referred to the Ohio State Bar Association for mediation or arbitration.*" (Emphasis added.)

## I. Justiciability

The first issue raised in this appeal is the justiciability of this case, since the instant fee dispute has not yet been arbitrated to its conclusion. This issue is controlled by the decision of the United States Supreme Court in *Thomas v. Union Carbide Agricultural Products Co.* (1985), 473 U.S. 568, 105 S.Ct. 3325, 87 L.Ed.2d 409. In that case, a pesticide manufacturer challenged the constitutionality of a binding arbitration provision of the federal Insecticide, Fungicide, and Rodentia Act. The court held that the manufacturer's constitutional claims demonstrated sufficient ripeness to establish a concrete case or controversy, even though the manufacturer had not yet submitted to arbitration, since the claims did not depend on the outcome of a given arbitration and presented questions which were purely legal. *Id.* at 581–582, 105 S.Ct. at 3333–3334, 87 L.Ed.2d at 419–421.

In this case, resolution of appellant's constitutional challenge to the compulsory arbitration under DR 2–107 does not depend on the outcome of the underlying fee dispute. The legal issues raised by appellant's complaint may be resolved without the development of the facts surrounding the fee dispute. Thus, under *Thomas,* appellant had standing to bring his constitutional challenge to DR 2–107 in the common pleas court.

## II. Procedural Due Process

Appellant contends that compulsory arbitration under DR 2–107 violates his right to due process of the law as guaranteed by Sections 1 and 16, Article I of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution. We disagree.

Due process does not necessarily require judicial process. *Reetz v. Michigan* (1903), 188 U.S. 505, 507, 23 S.Ct. 390, 391–392, 47 L.Ed. 563, 565–566. Indeed, "[n]o court has interpreted the fourteenth amendment to include a fundamental right to a trial." *Guralnick v. Supreme Court of New Jersey* (D.N.J.1990), 747 F.Supp. 1109, 1113, affirmed without opinion (C.A.3, 1992), 961 F.2d 209. "The due process clause of the fourteenth amendment requires notice and an opportunity to be heard before an impartial observer, and provides the right to confront and cross-examine witnesses prior to the deprivation of a life,

liberty or property interest." *Id.* See, also, *Goldberg v. Kelly* (1970), 397 U.S. 254, 267–268, 90 S.Ct. 1011, 1020–1021, 25 L.Ed.2d 287, 298–299.

The trial court relied on the case of *In re Application of Philip J. LiVolsi* (1981), 85 N.J. 576, 428 A.2d 1268, in concluding that DR 2–107 did not violate due process. In that case, the New Jersey Supreme Court upheld the validity of a court rule requiring compulsory arbitration of attorney-client fee disputes. An attorney challenged the constitutionality of the rule, contending among other things that the rule denied his due process rights under the state and federal Constitutions. The court held that its plenary constitutional power over the practice of law authorized it to mandate procedures for the resolution of attorney-client fee disputes. As to the attorney's due process claim, the court likened the fee dispute resolution scheme promulgated by the court to proceedings before administrative agencies, noting that administrative determinations do not offend the Due Process Clause of the Fourteenth Amendment simply because they are made final and unreviewable in the courts. *Id.*, 85 N.J. at 592–593, 428 A.2d at 1276.

Similarly, in *Guralnick*, 747 F.Supp. at 1113, a United States District Court analyzed the same New Jersey Supreme Court rule and found that the rule did not violate due process. *Id.*, 747 F.Supp. at 1114. In determining the reach of due process in that case, the court employed the approach expressed in *Mathews v. Eldridge* (1976), 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18. *Guralnick* at 1113; accord *A. Fred Miller v. Purvis* (1996), 921 P.2d 610, 618 (applying *Mathews* and upholding Alaska Bar Rules 34–42, mandating arbitration of attorney fee disputes with client after concluding that the lack of appellate review on the merits did not violate the attorney's due process rights).

In *Mathews*, the United States Supreme Court stated:

"[O]ur prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural require-ment would entail. * * *" *Id.* at 334–335, 96 S.Ct. at 903, 47 L.Ed.2d at 33.

Part of the private interest appellant seeks to protect in this case is his "property interest" in a reasonable fee for his legal services. *Guralnick*, 747 F.Supp. at 1113. Accordingly, the issue for this court is whether compulsory binding arbitration under DR 2–107 denies appellant his right to a reasonable fee without due process of law.

Under *Mathews,* we begin our analysis by determining whether the procedure set forth under DR 2–107 provides sufficient safeguards to protect appellant from an unconstitutional deprivation of his right to collect a reasonable fee. In this regard, the Ohio State Bar's Resolution Plan provides, in part:

"3. In disputes between lawyers under DR 2–107, any one of the disputants may notify the OSBA Bar Counsel in writing concerning the dispute and request that the mediation/arbitration process be made available for resolution of the dispute. Such party shall state in writing that the dispute is one arising under DR 2–107 and that such dispute is not then pending for resolution before any local bar association. Such referring party will likewise provide the name and address of all parties to the dispute, and shall simultaneously send a copy of such written request to all such parties.

" * * * *

"6. Should the disputants choose arbitration, or if mediation is unsuccessful in producing a resolution of the fee division dispute, arbitration of the dispute shall proceed and shall be binding. The disputants shall inform the OSBA Bar Counsel whether they want one arbitrator or a panel of three arbitrators. If the disputants cannot agree whether to use one arbitrator or three, a panel of three arbitrators shall be used. The OSBA Bar Counsel shall choose the names of at least five arbitrators to submit to the parties. Each of the parties may eliminate one name. If necessary, in the case of a three arbitrator panel, the Bar Counsel may present additional names to the parties. After each party has had the opportunity to eliminate one name, the Bar Counsel shall name the three arbitrators from the remaining list of names. The chairperson of the panel of three arbitrators shall be chosen by the panel.

" * * * *

"9. In the case of an arbitration, the arbitrator or the chairperson of a three member arbitration panel shall be responsible for conducting the hearing, reviewing documents presented by the parties, and rendering a written arbitration award. Such written arbitration award shall be delivered to the Bar Counsel within 10 days after the conclusion of the arbitration hearing. The Bar Counsel shall serve the written arbitration award upon the disputants by ordinary mail.

"10. The then-current American Arbitration Association Commercial Arbitration Rules, Rules 22–47, and Rule 52, are hereby incorporated for use in the arbitration of fee division disputes administered by the OSBA pursuant to this plan, to the extent that those Rules are not inconsistent with this OSBA plan.

" * * * *

"13. All proceedings hereunder shall be confidential and all records maintained as such.

"14. Enforcement of an arbitration award if not otherwise satisfied by the parties, may be made in accordance with Ohio Revised Code Sections 2711.09 through 2711.12."

In our view, the procedure set forth by the Council of Delegates contains adequate safeguards to ensure that attorneys involved in fee disputes with other attorneys will not be arbitrarily or unfairly denied the right to collect a reasonable fee for professional services. The resolution plan and the AAA Rules, incorporated thereby, provide participants with an opportunity to present evidence at a hearing before a fair and impartial panel of arbitrators. Additionally, the plan ensures that the participants will receive adequate notice of all proceedings and a timely decision. Moreover, while a right of appeal on the merits is not available from the award of the arbitrators, R.C. 2711.09 through 2711.13 provide a limited right of review by the common pleas court. Thus, there is some further protection from the risk of an erroneous deprivation of plaintiff's right to collect a reasonable fee.[1]

With regard to the government interest advanced by compulsory arbitration, Section 2(B)(1)(g), Article IV of the Ohio Constitution provides:

"(B)(1) The supreme court shall have original jurisdiction in the following:

" * * *

"(g) Admission to the practice of law, the discipline of persons so admitted, and all other matters relating to the practice of law."

In *LiVolsi*, the New Jersey Supreme Court made the following observations about a similar provision in the New Jersey Constitution:

"Given the critical importance of the constitutional power of this Court over the practice of law, and its pervasiveness, starting with admission, ending with disbarment, and covering everything in-between, we have no doubt that the power extends to every aspect of fee agreements between lawyers and clients. If this Court can set a limit on fees for certain matters * * * and disregard completely fee agreements in *all* matters (if they are unreasonable) * * * if, in short, this Court has the authority to control the substance of the fee relationship, then a power of a lesser magnitude determining the procedure for resolving fee disputes must also be within our province." (Emphasis added.) *Id.*, 85 N.J. at 585–586, 428 A.2d at 1272–1273.

---

1. This court is less concerned with the procedures employed by the Cleveland Bar inasmuch as a right of review by the Ohio State Bar follows in the event the matter is not resolved locally. Nevertheless, we note that the arbitration procedures employed by the Cleveland Bar Association contain similar safeguards to those provided in the Resolution Plan.

Like the New Jersey Constitution, the Ohio Constitution grants plenary power to the Ohio Supreme Court in all matters concerning the regulation of the bar. The constitutional authority to regulate nearly every facet of the profession, from the application and admission process to attorney discipline and disbarment, also includes the authority to regulate fees.

Moreover, the arbitration provisions in DR 2–107 provide an expedient means of disposing of fee disputes between attorneys, while the confidential provisions set forth in the Resolution Plan assure that client privileges will not be violated in the process.[2]

In short, appellant has not met his burden under *Mathews* of establishing that the risk of an unconstitutional deprivation of his right to collect a reasonable fee associated with DR 2–107 outweighs the valid government interest in maintaining control over fee disputes or that compulsory binding arbitration set forth in DR 2–107(B) does not further that interest. Thus, the trial court did not err when it determined that DR 2–107 comports with the requirements of due process of law as guaranteed by the United States and Ohio Constitutions.

### III.   Equal Protection

Appellant next contends that DR 2–107 unconstitutionally deprives him of equal protection of the laws guaranteed by the Fourteenth Amendment to the United States Constitution and Section 2, Article I of the Ohio Constitution. We disagree.

Attorneys are not a "suspect class" for equal protection purposes. See *LiVolsi*, 85 N.J. at 586–587, 428 A.2d at 1273; *Guralnick*, 747 F.Supp. at 1114. Furthermore, this case does not involve the deprivation of a fundamental right, since there is no absolute right to practice law. *Id.* Consequently, DR 2–107(B), which makes a distinction between attorneys involved in fee disputes and other individuals involved in similar contractual issues, is not subject to the strict scrutiny standard as appellant now contends. *Id.*

Rather, DR 2–107 must withstand only the "rational basis test" in order to be held constitutional under the Equal Protection Clause. *Guralnick*, 747 F.Supp. at 1114. The "rational basis test" requires that the classification created by the regulation be rationally related to the achievement of a legitimate state interest. *Id.* Looking at the procedures set forth in the Resolution Plan, compulsory arbitration pursuant to DR 2–107(B) is rationally related to the legitimate

---

2.   We express no opinion whether DR 4–101(C)(4), which permits lawyers to disclose client confidences as "necessary to establish or collect his fee," applies in fee disputes between attorneys.

interest of expeditiously resolving fee disputes between attorneys in a manner that does not erode public confidence in the legal profession.

Appellant next argues that DR 2–107 creates an irrational distinction between attorneys involved in fee disputes with attorneys from other firms and attorneys involved in fee disputes with members of their own firm.

Appellant does not develop this argument in his brief other than to say that there can be no justification for treating attorneys differently for purposes of fee disputes simply because they are not members of the same law firm. However, there is an obvious reason for this distinction given the fact that members of the same law firm are contractually bound to one another by operation of other business agreements. If a fee dispute between members of the same firm is not handled internally, the ultimate resolution of such a dispute would necessarily involve issues beyond the fee agreement itself. These other issues would clearly fall outside the intended scope of DR 2–107(B). Conversely, where a fee dispute arises between members of different firms, generally the only existing contractual relationship between the attorneys is the fee agreement itself. These relatively simple disputes are more amenable to arbitration. Thus, a rational basis exists for distinguishing attorneys in the same firm from those in different firms for purposes of compulsory arbitration under DR 2–107.

For the foregoing reasons, we hold that DR 2–107 does not deny appellant the equal protection of the laws guaranteed by the United States and Ohio Constitutions.

## IV. Obligation of Contracts

Appellant also contends that DR 2–107(B) unconstitutionally deprives him of access to the courts to enforce his contractual rights. Although appellant argues this issue in terms of substantive due process, appellant's argument is better characterized under Section 10, Article I of the United States Constitution prohibiting the enactment of laws which impair the obligation of contracts.[3]

In determining whether a rule, regulation, or statute violates the Contract Clause, the first step is to determine whether the regulation constitutes a substantial impairment of a contractual relationship. *Smith v. Denihan* (1990), 63 Ohio App.3d 559, 570–571, 579 N.E.2d 527, 534–536. If so, the regulation must be justified by a significant and legitimate public purpose. *Id.* Finally, if a

---

3. It has also been held that the right of contract is a "property interest" guaranteed by Section 1, Article I of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution. See *Akron v. Pub. Util. Comm.* (1933), 126 Ohio St. 333, 185 N.E. 415; *Cleveland v. Clements Bros. Constr. Co.* (1902), 67 Ohio St. 197, 65 N.E. 885; *Joseph Bros. Co. v. Brown* (1979), 65 Ohio App.2d 43, 19 O.O.3d 31, 415 N.E.2d 987.

legitimate public purpose exists, the last step is to determine whether adjustment of the rights and responsibilities of the parties is based upon reasonable conditions and is of a character appropriate to the public purpose justifying the adoption of the regulation. *Id.,* citing *Energy Reserves Group, Inc. v. Kansas Power & Light Co.* (1983), 459 U.S. 400, 410, 103 S.Ct. 697, 703–704, 74 L.Ed.2d 569, 579–580.

In *Guralnick,* the district court upheld a New Jersey Supreme Court rule requiring arbitration of attorney-client fee disputes at the client's option. The attorney there alleged that the rule unconstitutionally impaired his right to institute a civil action to recover the value of legal services rendered in violation of Section 10, Article I of the United States Constitution. *Id.,* 747 F.Supp. at 1115. The district court rejected this argument, stating:

"First, the impairment alleged by the plaintiffs' [law firm] is not substantial because it does not change the terms of the contract. Rather, it dictates the forum in which disputes regarding the attorney's fees may be adjudicated, if the client so chooses. Plaintiffs' have not demonstrated that the imposition of an arbitration committee for attorney fee disputes results in significant changes in the fees charged the clients. The allegation that '[a]mong members of the bar, there is a widely held perception that Fee Arbitration Committees typically compromise lawyers' bills' is insufficient. * * *" *Id.,* 747 F.Supp. at 1115.

In this case, DR 2–107 simply dictates the forum in which appellant's contractual rights and obligations will be adjudicated. The rule does not alter any of the essential terms of the fee agreement. Moreover, appellant here has not even alleged that the arbitration procedure will result in an unfair determination of his fee. In short, DR 2–107(B) does not substantially impair or alter the rights or obligations of appellant's fee agreement. Absent a substantial impairment of contractual rights, there can be no constitutional infirmity under the contract clause. *Smith.*

## V. Trial by Jury

Appellant next contends that DR 2–107(B), which requires binding arbitration of fee disputes between attorneys from different firms, unconstitutionally deprives him of his right to a trial by jury as guaranteed by Section 5, Article I of the Ohio Constitution.[4]

Section 5, Article I of the Ohio Constitution provides:

---

**4.** Although the rule itself does not state that arbitration before the Ohio State Bar Association is either "final," or "binding," the Ohio State Bar Association DR 2–107 Attorney's Fee Division Dispute Resolution Plan, adopted by the Council of Delegates on November 9, 1991, expressly states that such arbitration is "binding." See DR 2–107(C)(6).

"The right to trial by jury shall be inviolate, except that, in all civil cases, laws may be passed to authorize the rendering of a verdict by the concurrence of not less than three-fourths of the jury."

Section 5, Article I of the Ohio Constitution does not guarantee a jury trial in all cases, but only for those causes of action that existed at common law at the time the Ohio Constitution was adopted. *Sorrell v. Thevenir* (1994), 69 Ohio St.3d 415, 421, 633 N.E.2d 504, 509–510. The right to a jury trial in a civil action, which is guaranteed by the Ohio Constitution, is a right which may be waived. *Cassidy v. Glossip* (1967), 12 Ohio St.2d 17, 41 O.O.2d 153, 231 N.E.2d 64, paragraph one of the syllabus. The trial court held that the parties expressly agreed to have all such fee disputes submitted to binding arbitration, pursuant to DR 2–107(B), when they were admitted to the practice of law in the state of Ohio.

Gov.Bar R. IV(1) provides in part:

"Section 1. Applicability. *The Code of Professional Responsibility, as adopted by this Court on October 5, 1970 and set forth in 23 Ohio State 2d Reports, as amended, shall be binding upon all persons admitted to practice law in Ohio.* The willful breach of the Code shall be punished by reprimand, suspension, disbarment, or probation as provided in Gov.Bar R. V." (Emphasis added.)

In *Kelley Drye & Warren v. Murray Industries, Inc.* (D.N.J.1985), 623 F.Supp. 522, one of the issues for the district court was whether a rule adopted by the New Jersey Supreme Court requiring arbitration of attorney-client fee disputes, at the option of the client, unconstitutionally deprived attorneys of their right to a trial by jury.

As stated in *Kelley Drye & Warren* at 527, "No one has an absolute right to practice law, and the State may impose reasonable conditions and limitations upon those who wish to exercise that privilege." The issue then is whether or not the rule at issue is reasonable and, therefore, appellant should be bound by it. Unfortunately, although the matter was submitted on stipulation, none was and no evidence was, advanced on the issue of the reasonableness of the rule, and the trial court thus made no finding. Except for the previously referenced section to the Ohio State Bar Association Report, there is simply no basis to surmise whether this rule was reasonable.

We hold, therefore, that, as per the analysis in this opinion, it may very well be that, by being subject to the Code of Professional Responsibility, a jury trial has been validly waived in this case. However, a hearing on the reasonableness of that rule is mandated to determine that issue. If the condition and waiver of a jury trial predicated on DR 2–107 is reasonable, then the trial court acted properly. However, without a record to review, we have no factual basis to assess the reasonableness of this rule and the propriety of the trial court's ruling.

Our only recourse is to remand to the trial court for a hearing to determine the rule's reasonableness in that respect.

Appellant's assignment of error is sustained to the extent indicated. The judgment of the trial court is reversed, and this cause is remanded to the trial court for a hearing to determine the reasonableness of the rule in its eliminating appellant's right to a jury trial.

*Judgment reversed*
*and cause remanded.*

CLOSE and PEGGY BRYANT, JJ., concur.

PETREE, J., dissents.

PETREE, Judge, dissenting.

Being unable to agree with the conclusions of the majority, I must respectfully dissent.

In my view, the threshold issue in this case is whether the rule adopted by the Supreme Court of Ohio requiring arbitration of fee disputes between attorneys from different firms unconstitutionally deprived appellant of his right to a trial by jury. This issue was addressed by the federal district court in *Kelley Drye & Warren v. Murray Industries, Inc.* (D.N.J.1985), 623 F.Supp. 522. In that case, the district court was asked to determine whether a rule adopted by the New Jersey Supreme Court requiring arbitration of attorney-client fee disputes unconstitutionally deprived attorneys of their right to a trial by jury. The district court held that the plaintiff-law firm had "voluntarily given up its right to a trial of any kind if a client elects to arbitrate a fee dispute." *Id.* at 527. The court explained that, when the law firm sought and obtained admission to the bar, it voluntarily subjected itself to the disciplinary jurisdiction of the New Jersey Supreme Court, which jurisdiction includes the fee arbitration procedures mandated by the court rules. *Id.* at 525.

I agree with the reasoning of the federal district court, and I believe that an application of that reasoning in this case leads to the same result.

Gov.Bar. R. I(8) states that the Code of Professional Responsibility shall be binding upon all persons admitted to the law of Ohio "as amended." Furthermore, Gov.Bar. R. I(8) sets forth the oath taken by the attorneys upon admission to the practice of law in Ohio, as follows:

"Section 8. Induction to the Bar.

"(A) Each applicant accepted for admission to the practice of law in Ohio must have his or her name entered on a roll and shall take the following oath of office:

"YOUR STATEMENT OF THE FOLLOWING OATH INDICATES THAT YOU EITHER SWEAR OR AFFIRM TO BE BOUND BY THE OATH:

"I, _____, hereby accept my responsibilities as a member of the bar;

"I will support the Constitution and the laws of the United States and the Constitution and the laws of Ohio[.]" [5]

In this case, given the clear language of the oath taken by appellant upon his admission to the bar, I find that appellant expressly waived his right to a trial by jury of fee disputes with attorneys from other firms. Accordingly, even if appellant had the common-law right to a jury trial of his fee dispute, appellant waived that right when he took his oath upon admission to the bar.

Given appellant's waiver of his right to a trial by jury of this fee dispute, his rights under Section 5, Article I of the Ohio Constitution are not implicated by the application of DR 2–107(B) in this case.

Furthermore, given appellant's waiver, the issue then becomes whether the Disciplinary Rule unconstitutionally infringes upon any property rights of appellant. On this issue, I agree with the procedural due process and Contracts Clause analysis of the majority opinion. However, I cannot agree that a remand of this case to the trial court to determine the objective "reasonableness" of this rule would serve any useful purpose. Statutes and rules enjoy the presumption of constitutionality, and the burden is on the party who challenged the statute or rule on constitutional grounds to demonstrate unconstitutionality. *OPUS III–VII Corp. v. Ohio Bd. of Pharmacy* (1996), 109 Ohio App.3d 102, 671 N.E.2d 1087. If the record does not contain evidence on this issue, appellant has not met his burden.

Moreover, it is beyond debate that the Supreme Court of Ohio had the inherent power to regulate the practice of law in the state of Ohio. It is also beyond undispute that that power includes the authority to regulate the fees charged by attorneys. Indeed, DR 2–106(A) specifically prohibits an attorney from collecting an "illegal or clearly excessive fee." The reasonableness of DR 2–106 has never been questioned. DR 2–107(A) simply prescribes a method of enforcing this rule in certain special cases.

For the foregoing reasons, I would affirm the judgment of the Franklin County Court of Common Pleas.

---

5. The oath now includes:
   "I will in all respects observe and abide by the Code of Professional Responsibility adopted by the Supreme Court of Ohio * * *."