**KELLEY DRYE & WARREN, Plaintiff,**

v.

**MURRAY INDUSTRIES, INC. and Murray Chris-Craft Sportboats, Inc., Defendants.**

Civ. A. No. 85–2495.

United States District Court, D. New Jersey.

Dec. 11, 1985.

Kelley Drye & Warren by John Patrick Marshall, Morristown, N.J., pro se.

Sills Beck Cummis Zuckerman Radin Tischman & Epstein by Jeffrey J. Greenbaum, Newark, N.J., for defendants.

DEBEVOISE, District Judge.

A.  *The Proceedings*

Plaintiff, Kelley Drye & Warren ("Kelley Drye"), commenced this action against defendants Murray Industries, Inc. and Mur-

ray Chris-Craft Sportboats, Inc. (collectively referred to as "Chris-Craft") to recover the sum of $109,268.37 for services rendered and disbursements incurred during the representation of Chris-Craft in an action in this court entitled *Image Boat Company v. Murray Chris-Craft Sport Boats, Inc., et al.*, 84 Civ. 2381. The complaint in that action alleged, *inter alia,* a violation of federal trademark law, violation of state common and statutory unfair competition laws, disparagement, violation of Florida's "anti-splashing" statute, breach of contract and tortious interference with contractual relations. After settlement and dismissal of that action Kelley Drye sought payment of its bills for services and disbursements. Chris-Craft failed to pay. The complaint in this action was filed on May 24, 1985.

On July 11, 1985, purportedly acting pursuant to N.J.Ct.Rule 1:20A–3(a), Chris-Craft filed a Request For Fee Arbitration with the District Fee Arbitration Committee of the Supreme Court of New Jersey (the "Committee"). The Request asked the Committee to "notify the United States District Court with respect to this timely filing so that the pending action will be stayed in accordance with Rule 1:20A–3."

Kelley Drye refused to accede to the jurisdiction of the Committee, and in lieu of answering in the instant case Chris-Craft moved to dismiss the complaint or, in the alternative, to compel arbitration and stay all proceedings.

B. *New Jersey's Fee Arbitration System*

The New Jersey Constitution grants to the New Jersey Supreme Court exclusive jurisdiction "over the admission to the practice of law and the discipline of persons admitted." N.J. Const., Art. 6, § 2, Para. 3. The Supreme Court has construed its rule making powers in the broadest terms. *Winberry v. Salisbury,* 5 N.J. 240, 74 A.2d 406 (1950), *cert. denied,* 340 U.S. 877, 71 S.Ct. 123, 95 L.Ed. 638 (1950).

Acting pursuant to its constitutional powers to regulate the admission to practice and the discipline of persons admitted, the Supreme Court provided for compulsory binding arbitration of attorney-client fee disputes if a client so requests. N.J.Ct. Rule 1:20A–1, *et seq.*

The Supreme Court has appointed a fee arbitration committee to serve in each of the State's Disciplinary Districts. N.J.Ct. Rule 1:20A–1. Such committees consist of such number of members, not fewer than eight, as the Court may determine, at least four of whom shall be New Jersey attorneys and at least two of whom shall not be attorneys.

Each Fee [arbitration] Committee shall, pursuant to these rules, have jurisdiction (a) to arbitrate fee disputes.... N.J.Ct.Rule 1:20A–2.

(a) Submission. A fee dispute shall be arbitrated only upon a client's written request or upon written consent to the attorney's request. The fee committee shall have authority to consider such requests whether or not the attorney has already received the fee in dispute. *The request or consent shall include a stipulation by the client that if an action for payment of the fee is then pending, it shall be stayed pending a determination by the fee committee, and the amount of the fees so determined shall be entered in the judgment in the action,* provided that a client's request for arbitration shall be filed within sixty (60) days after service of process.... N.J.Ct.Rule 1:20A–3.

The hearing must be held before a panel having at least three members, at least a majority of whom shall be attorneys. N.J. Ct.Rules 1:20A–3(b). Normally a panel has two attorney members and one non-attorney member. The determination will be made by a majority of the panel. Committees have the power, at a party's request, to compel the attendance of witnesses and the production of documents by the issuance of subpoenas. No transcript or recording is made unless ordered by the Administrative Director of the Courts, nor need the rules of evidence be strictly observed. N.J.Ct.Rule 1:20A–3(b).

There is no appeal on the merits from the determination of a committee. However, either the attorney or the client may appeal to the Disciplinary Review Board (the nine-person body appointed by the Supreme Court to review the determinations of district ethics committees and fee arbitration committees) if it is alleged that a committee member improperly failed to disqualify himself, the committee failed to comply with the procedural requirements of the Rules or there was actual fraud on the part of any member of the committee. If the Disciplinary Review Board finds after a hearing that there had been a violation of N.J.Ct.Rule 1:20A–3(c) it may either remand to the committee for a new determination or determine the matter itself. There does not appear to be any appeal from the action of the Disciplinary Review Board.

A committee determination will be entered as a judgment against the client in any action pending against the client for collection of the fee or, if no such action is pending, the attorney may, by summary action obtain judgment in the amount of the fee determined by the committee. N.J. Ct.Rule 1:20A–3(a).

The New Jersey Supreme Court explained its purpose in enacting the Fee Arbitration System in *In re LiVolsi*, 85 N.J. 576, 428 A.2d 1268 (1981),[1] which challenged the state and federal constitutionality of the system, as follows:

> [F]orcing clients to go to court to resolve attorney fee disputes places a heavy burden on the clients.... Clients, especially those of limited income, often find it very difficult to procure another attorney to represent them in fee disputes. Also, if a client were forced to give the attorney a retainer that eventually proved to be unreasonably high, the client might not be able to afford the delay of another trial before being reimbursed....
> [I]mposing these burdens on clients causes "immeasurable" harm to the rela-

tionship between the Bar and the public. (Citations omitted.)

*Id.* at 599, 428 A.2d 1268.

> Though the matters which come to fee arbitration represent a very small proportion of the total number of fee relationships, they are among the most visible matters to a public greatly concerned about how the judicial system deals with attorney-client disputes. Our success in establishing a fair fee arbitration system will do much to assure the public of the fairness of the judicial system as a whole, and thereby increase the public confidence that is so necessary for that system to operate effectively.

*Id.* at 604, 428 A.2d 1268.

Chris-Craft contends that this law, applicable in a diversity action such as this, prohibits judicial resolution of such claims when a client requests arbitration. Chris-Craft further argues that comity considerations compel arbitration and dismissal to avoid preemption of state proceedings. Finally, Chris-Craft argues that federal law favors arbitration, that Kelley Drye has an implicit agreement with the State of New Jersey to submit its claim to arbitration and that Chris-Craft is a third party beneficiary of this agreement.

In opposition, Kelley Drye argues that to apply Rule 1:20A–1 *et seq.* would strip this court of its diversity jurisdiction, something a state may never do. Furthermore, to submit the claim to binding arbitration would deny it its Seventh Amendment right to a jury trial. Kelley Drye argues that this controversy does not fall within the categories where abstention should be observed. Finally, Kelley Drye maintains that it has not entered into any agreement, implicit or otherwise, with the State of New Jersey to arbitrate such claims.

### C. *Applicability of N.J.Ct.Rule 1:20A–1, et seq. to Kelley Drye*

█ In its complaint in this action (Par. 1) Kelley Drye asserts that it "is a partner-

---

**1.** *In re LiVolsi* held that the fee arbitration system did not violate the Fourteenth Amendment right to equal protection or the qualified right to

a jury trial under New Jersey's Constitution (this right had never been absolute in attorney-client fee disputes). *Id.*

ship engaged in the practice of law, with its principal office at 101 Park Avenue, New York, New York and with an office at 175 South Street, Morristown, New Jersey."

Even though it is a New York partnership, Kelley Drye is listed in the "Official List of Active Members of the Bar of New Jersey." 1985 New Jersey Lawyers Diary and Manual, at p. 604. It is thus a New Jersey law firm admitted pursuant to the Rules of the New Jersey Supreme Court to practice law in this State. N.J.Ct.Rule 1:21–1, *et seq.*

When Kelley Drye sought and obtained admission to the bar of New Jersey, it voluntarily subjected itself to the disciplinary jurisdiction of the New Jersey Supreme Court. That jurisdiction includes the fee arbitration procedures mandated by the Court Rules.

(a) Every attorney authorized to practice law in the State of New Jersey ... shall be subject to the disciplinary jurisdiction of the Supreme Court....

To assist in the administration of its disciplinary function, the Supreme Court shall establish in accordance with these rules ... District Fee Arbitration Committees ... a Disciplinary Review Board....

N.J.Ct.Rule 1:20–1(a).

When Kelley Drye entered an appearance in the federal action in which it represented Chris-Craft, it was not admitted *pro hac vice* pursuant to General Rule 4C of the Rules of this court. Rather it was admitted pursuant to General Rule 4B which provides for the automatic admission of attorneys licensed to practice by the Supreme Court of New Jersey.

It seems very clear that when Kelley Drye elected to avail itself of the right to practice law in New Jersey it undertook to do so in accordance with the Rules and procedures established by the New Jersey Supreme Court. It did not shed itself of the obligations it assumed and the limita-

tions to which it subjected itself simply because it chose to institute its action for attorneys' fees in the federal court. Thus it is bound by the New Jersey Disciplinary Rules, including N.J.Ct.Rule 1:20A–1, *et seq.*

### D. *Diversity Jurisdiction*

■ Kelley Drye urges that it is in federal court by right, diversity jurisdiction having been conferred upon the court by 28 U.S.C. § 1332. Kelley Drye is a New York partnership. Chris-Craft's component corporations are Delaware corporations with their principal places of business in Florida. (Presumably none of Kelley Drye's partners are citizens of Delaware or Florida.) The amount in controversy exceeds the value of $10,000 exclusive of interest and costs. Kelley Drye maintains, quite correctly, that a state cannot divest a federal court of diversity jurisdiction either by statute or by court rule. *Railway Company v. Whitton's Administration,* 80 U.S. (13 Wall) 270, 286, 20 L.Ed. 571 (1871).

Kelley Drye contends that New Jersey law has provided it with the substantive right to be paid for the legal services which it has performed, and that having created that right the State cannot mandate that the right be enforced in State rather than federal proceedings. *Markham v. City of Newport News,* 292 F.2d 711, 716 (4th Cir. 1961).

In *Kanouse v. Westwood Obstetrical and Gynecological Associates,* 505 F.Supp. 129 (D.N.J.1981), a medical malpractice action in which jurisdiction was based upon diversity of citizenship, defendants moved to dismiss the action on the basis of N.J.Ct. Rule 4:21 which set forth procedures for state panel review of medical malpractice cases after they were instituted. Judge Brotman denied the motion on the ground that a state statute or rule cannot divest a federal court of its jurisdiction.[2]

---

**2.** Judge Brotman, however, provided for the creation of a review panel in medical malpractice cases so that such cases instituted in the federal court would be processed in a manner

quite similar to state procedures. *Cf., Hamilton v. Roth,* 624 F.2d 1204 (3d Cir.1980), which held that compliance with Pennsylvania's nonbinding arbitration proceedings in medical malprac-

■ Thus in the present case Chris-Craft's motion to dismiss should be denied. The court has diversity jurisdiction, and the existence of the fee arbitration rule cannot deprive the court of that jurisdiction.

## E. *Applicable Law*

■ The determination that this court must retain jurisdiction does not dictate that this court should decide the attorneys' fee controversy. Under the doctrine of *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) a federal court in diversity cases must give effect to the substantive law of the state in which it sits. Here, while the substantive law of New Jersey gives attorneys the right to charge and recover legal fees for services rendered, New Jersey substantive law also conditions the right to practice law in New Jersey upon an undertaking to resolve attorneys' fee disputes through arbitration as provided in the Rules of Court. The obligations imposed by this undertaking constitute substantive law which New Jersey courts will enforce. I see no reason why these obligations should not similarly be enforced by the federal court.

Closely analogous is the situation where the parties agree to arbitrate specified disputes. Such an agreement will be enforced in either the state or federal court.

Arbitration is a favored method of dispute resolution, e.g., *Dean Witter Reynolds, Inc. v. Byrd*, — U.S. —, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985); *Barrowclough v. Kidder, Peabody & Company, Inc.*, 752 F.2d 923 (3d Cir.1985). Chris-Craft argues persuasively that the present action is governed by 9 U.S.C. § 3 providing for a stay of proceedings where an issue therein is referable to arbitration:

> If any suit or proceeding be brought in any of the Courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit

is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

N.J.Ct.Rule 1:20–1(a) subjecting every attorney authorized to practice law in New Jersey to the disciplinary jurisdiction of the Supreme Court and N.J.Ct.Rule 1:20A–1, *et seq.*, adopted pursuant to that jurisdiction, requiring New Jersey attorneys to arbitrate fee disputes might well constitute a written agreement for arbitration within the meaning of 9 U.S.C. § 3, Kelley Drye having become a party to the agreement by taking advantage of the opportunity to practice law in New Jersey. However, that question of federal law need not be decided. It is sufficient that under New Jersey law Kelley Drye has committed itself to resolving fee disputes through the Court prescribed arbitration process if a client so elects. The federal arbitration cases, if not controlling, at least demonstrate that New Jersey's Court Rule and its enforcement are consistent with federal policies favoring arbitration.

## F. *Right to Jury Trial*

Kelley Drye has not yet made a jury demand but it asserts that it may still do so,[3] and if it does the conclusive effect of the committee's determination puts the fee arbitration system in direct collision with the Seventh Amendment right to a jury trial. The New Jersey Supreme Court has decided that New Jersey equity courts have historically had the power to adjudicate attorney-client fee disputes without juries. *In re LiVolsi*, 85 N.J. 576, 587–591, 428 A.2d 1268 (1981).

---

tice claims was a condition precedent to the existence of a cause of action which could be sued on in any court, state or federal.

**3.** Kelley Drye's right to a jury trial cannot be deemed waived until Chris-Craft files its answer to the complaint. Fed.R.Civ.P. 38(b).

■ This holding does not apply to a federal court's diversity jurisdiction.

> [T]he right to a jury trial in the federal courts is to be determined as a matter of federal law in diversity as well as other actions. The federal policy favoring jury trials is of historic and continuing strength.... Only through a holding that the jury-trial right is to be determined according to federal law can the uniformity in its exercise which is demanded by the Seventh Amendment be achieved. In diversity cases, of course, the substantive dimension of the claim asserted finds its source in state law, ... but the characterization of that state created claim as legal or equitable for purposes of whether a right to jury trial is indicated must be made by recourse to federal law.

*Simler v. Conner,* 372 U.S. 221, 222, 83 S.Ct. 609, 610, 9 L.Ed.2d 691 (1963). Commentators find the Court's holding in *Simler* unambiguous.

> State law may deny a jury trial in a case where the Seventh Amendment requires a jury trial. In this situation it is clear that the federal court must allow a jury trial. This is the precise holding of *Simler* and that holding is sound. The language of the Rules of Decision Act cannot prevail over the clear command of the Seventh Amendment.... Congress not only has explicit Constitutional authority to provide a jury trial in common law cases but indeed is prohibited from denying that kind of trial.

9 Wright & Miller, *Federal Practice and Procedure* § 2303 (1971). *See also* Reddish & Phillips, *Erie and the Rules of Decision Act: In Search of an Appropriate Dilemma,* 97 Harvard L.Rev. 356, 386–387 (1977). The command of the Seventh Amendment does not allow for the evaluation and balancing of state and federal interests as recommended by commentators in deciding what procedure to apply when state interests would interfere with the right to a jury trial. *Id.* at 394; 19 Wright & Miller, *Federal Practice and Procedure* § 4504 (1971). *See Byrd v. Blue Ridge Rural Electric Cooperative,*

*Inc.,* 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958).

■ However, the right to a jury trial can be given up, as parties do when they agree to arbitrate. Here Kelley Drye has voluntarily given up its right to a trial of any kind if a client elects to arbitrate a fee dispute. No one has an absolute right to practice law, and the State may impose reasonable conditions and limitations upon those who wish to exercise that privilege. Here the Court Rules are reasonable and Kelley Drye has opted to be bound by them. No Seventh Amendment rights are implicated.

### G. *Miscellaneous Matters*

■ Kelley Drye urges that the fee arbitration rule be relaxed in this case. N.J.Ct. Rule 1:1–2 provides that "[u]nless otherwise stated, any rule may be relaxed or dispensed with by the court in which the action is pending if adherence to it would result in an injustice." As a basis for relaxing the arbitration requirement Kelley Drye urges that its services were rendered in a federal court proceeding with which the Committee members would be unfamiliar, Chris-Craft is an out-of-state corporation which would not be subject to the Committee's subpoena power, and discovery would be unavailable.

To relax N.J.Ct.Rules 1:20A–1, *et seq.,* except in the most extraordinary circumstances, would seriously undermine the policies described above which the Rule seeks to implement. Further, none of the reasons for relaxation advanced by Kelley Drye are persuasive. The kinds of legal services rendered in the earlier federal action cannot be significantly different from the kinds of legal services rendered in other substantial state and federal actions. There should be little or no need for discovery. The information which Kelley Drye needs to establish its entitlement to the amount of fees and disbursements it seeks must be in its own possession. Chris-Craft will be before the Committee and subject to the Committee's subpoena or

direction to produce needed information. Depositions and extensive pretrial proceedings are precisely what the arbitration procedure is designed to avoid.

Chris-Craft urges dismissal on grounds of comity and abstention, *e.g., Middlesex Ethics Committee v. Garden State Bar Association,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982). This issue would be material only if I had concluded that it was necessary to address the substance of Kelley Drye's attorneys' fee claim. Nothing in the manner in which this case will be disposed of will affect New Jersey's public policy, and therefore I need not decide whether *Younger* abstention would be appropriate. *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

### H. *Conclusion*

For the reasons set forth above (i) Chris-Craft's motion to dismiss the complaint will be denied, (ii) an order will be entered requiring Kelley Drye to proceed with arbitration of its claim pursuant to N.J.Ct. Rules 1:20A–1, *et seq.,* staying this action pending completion of the arbitration proceedings and administratively terminating this action with the right of any party to move to reopen in order to enter a judgment in the amount determined in the arbitration proceeding or otherwise for good cause.

The attorneys for Chris-Craft are requested to submit an appropriate form of order.