**Mark S. GURALNICK, et al., Plaintiffs,**

v.

**SUPREME COURT OF NEW JERSEY, et al., Defendants.**

**Civ. No. 89–3958 (CSF).**

United States District Court,
D. New Jersey.

Sept. 26, 1990.

Mark S. Guralnick, Garber & Guralnick, Mount Laurel, N.J., for plaintiffs.

Robert J. Del Tufo, Atty. Gen. of N.J. by Sherrie L. Gibble, Deputy Atty. Gen., Trenton, N.J., for defendants Supreme Court of New Jersey, The Dist. Fee Arbitration Committee of the Supreme Court of New Jersey, The Dist. III Fee Arbitration Committee for Burlington and Ocean Counties and Nicholas C. Montenegro, Esquire, Secretary of the District III Fee Arbitration Committee.

Dietrich, Dietrich & Mikulski by Thaddeus P. Mikulski, Jr., Trenton, N.J., for defendant Yvonne Kiefer.

## OPINION

CLARKSON S. FISHER, District Judge.

Defendants' motion for judgment on the pleadings and plaintiffs' cross-motion for judgment on the pleadings are before the court. In their complaint, plaintiffs challenge the constitutionality of the New Jersey Fee Arbitration System ("FAS") and charge the New Jersey Supreme Court with violations of federal antitrust laws.[1] For the reasons that follow, summary judgment will be granted in favor of defendants.

The facts are not in dispute. This controversy arises from a fee dispute between the plaintiffs, Mark Guralnick and Joel Garber, and defendant Yvonne Kiefer. Kiefer hired Garber and Guralnick, attorneys, to represent her in a divorce action and signed a retainer agreement on November 17, 1988. Kiefer was not satisfied with the attorneys' services and refused to pay the full fee charged. The attorneys' fee was $2,124, of which $1,000 was paid as a retainer, leaving a balance of $1,124. Garber and Guralnick instituted an action against Kiefer for the balance in the Superior Court of New Jersey on July 7, 1989. Kiefer filed an answer on August 7, 1989, in which she noted that she had filed a request for fee arbitration.

---

**1.** Plaintiffs' complaint also alleged the violation of the New Jersey Antitrust Act, N.J.Stat.Ann. §§ 56:9–1 to :9–19 (West 1989); however, plaintiffs declined to address the issue in their motion for judgment on the pleadings. *See* Plaintiff's Brief at 57 n. 10.

Pending the outcome of the fee arbitration, plaintiffs' state court collection action was stayed. Plaintiffs then brought a 42 U.S.C. § 1983 action before this court and requested a stay of the fee arbitration, which was granted.

In their federal action, plaintiffs seek declaratory and injunctive relief. Plaintiffs claim that the compulsory nature of the New Jersey FAS violates their right to due process and to equal protection under the United States Constitution. Plaintiffs further claim that the FAS violates the contract clause, that it infringes upon their seventh amendment right to a jury trial, and that it results in involuntary servitude in violation of the thirteenth amendment. Finally, plaintiffs allege that the defendants, through the FAS, have conspired to restrain trade by arbitrarily and capriciously setting attorney's fees in order to reduce competition and impair transactions in interstate commerce.

A. *The New Jersey Fee Arbitration System*

Before turning to the issues in this case, a description of the fee arbitration system that exists presently in New Jersey is necessary. The New Jersey Constitution grants exclusive jurisdiction "over the admission to the practice of law and the discipline of persons admitted" to the New Jersey Supreme Court. N.J. Const., art. 6, § 2. The New Jersey Supreme Court has construed its rule-making powers in this regard very broadly. *Winberry v. Salisbury*, 5 N.J. 240, 254–55, 74 A.2d 406, 413–14, *cert. denied*, 340 U.S. 877, 71 S.Ct. 123, 95 L.Ed. 638 (1950).

Acting pursuant to its constitutional power to regulate the practice of law and the discipline of practitioners, the New Jersey Supreme Court provided a system of compulsory binding arbitration for attorney-client fee disputes. *See* S. Pressler, *Current Rules Governing the Courts of the State of New Jersey* 1:20A–1 to :20A–6 (1990) [hereinafter N.J.Ct.R.]. In *In re LiVolsi*, 85 N.J. 576, 428 A.2d 1268 (1981), the New Jersey Supreme Court explained

its purpose in enacting a system of compulsory fee arbitration:

[F]orcing clients to go to court to resolve attorney fee disputes places a heavy burden on the clients.... Clients, especially those of limited income, often find it very difficult to procure another attorney to represent them in fee disputes. Also, if a client were forced to give the attorney a retainer that eventually proved to be unreasonably high, the client might not be able to afford the delay of another trial before being reimbursed.... [I]mposing these burdens on clients causes "immeasurable" harm to the relationship between the Bar and the public....

Though the matters which come to fee arbitration represent a very small proportion of the total number of fee relationships, they are among the most visible matters to a public greatly concerned about how the judicial system deals with attorney-client disputes. Our success in establishing a fair fee arbitration system will do much to assure the public of the fairness of the judicial system as a whole, and thereby increase the public confidence that is so necessary for that system to operate effectively.

*Id.* at 599, 604, 428 A.2d at 1279–80, 1282–83 (citations omitted).

Implementing this system of fee arbitration, the New Jersey Supreme Court appointed Fee Arbitration Committees ("Committees") to serve in designated geographical areas. N.J.Ct.R. 1:20A–1. Jurisdiction to arbitrate fee disputes arising within its district is vested in each Committee. N.J. Ct.R. 1:20A–2. A Committee may have as many members as the court determines, but there may be no fewer than eight. At the minimum, the court must select four New Jersey attorneys and two non-attorneys. N.J.Ct.R. 1:20A–3(a).

The rules provide in material part:

A fee dispute shall be arbitrated only upon a client's written request or upon written consent to the attorney's request. Fee Committees shall have authority to consider such a request whether or not the attorney has already received the fee

in dispute.... *The request or consent shall include a stipulation by the client that if an action for payment of the fee is then pending, it shall be stayed pending a determination by the Fee Committee, and the amount of the fee as so determined shall be entered as a judgment in the action,* provided that a client's request for arbitration shall have been filed within sixty (60) days after service of process.

N.J.Ct.R. 1:20A–3(a) (emphasis added).

The arbitration committee hearing must be held before a panel of at least three members, a majority of whom must be attorneys. N.J.Ct.R. 1:20A–3(b). However, if the matter in controversy is less than $3,000, it may be heard by a single attorney. *Id.* A majority of the panel will render the Committee's decision. *Id.* Upon the request of a party, a Committee has the power to compel the attendance of witnesses and the production of documents through the issuance of subpoenas. *Id.* The rules of evidence and procedure need not be strictly adhered to during the hearing. *Id.* No transcript or recording of the hearing is made unless ordered by the Director of the Office of Attorney Ethics or the Disciplinary Review Board. *Id.* However, the decision of the Committee and the reasons in support of that decision must be recorded. *Id.*

If an action is pending against the client for collection of the fee, the Committee decision will be entered as a judgment. N.J.Ct.R. 1:20A–3(a). If no such action is pending, the attorney may, by summary action, obtain judgment in the amount of the fee determined by the Committee. *Id.*

There is no appeal on the merits from the determination of an arbitration committee. N.J.Ct.R. 1:20A–3(c). However, in certain instances, either the attorney or the client may appeal to the Disciplinary Review Board, a nine-person body appointed by the New Jersey Supreme Court to review the determinations of District Ethics Committees and Fee Arbitration Committees. *Id.;* N.J.Ct.R. 1:20–4(a), (e). If it is alleged that a Committee member improperly failed to disqualify himself, that the Committee failed to comply with the procedural requirements of the rules or that there was actual fraud on the part of any member of the Committee, an appeal may be taken. *Id.* If, after a hearing, the Disciplinary Review Board finds that there has been a violation of rule 1:20A–3(c), it may remand to the Committee for a new determination, or it may decide the matter itself. N.J. Ct.R. 1:20A–3(d). No appeal may be taken from the decision of the Disciplinary Review Board.

## B. *Standard of Review*

Defendants and plaintiffs both moved for judgment on the pleadings under rule 12(c) of the Federal Rules of Civil Procedure. A court will not grant a motion for judgment on the pleadings

> unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law. In considering a motion for judgment on the pleadings, the trial court is required to view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. In this fashion the courts hope to insure that the rights of the nonmoving party are decided as fully and fairly on a rule 12(c) motion, as if there had been a trial.

*Society Hill Civic Ass'n v. Harris*, 632 F.2d 1045, 1054 (3d Cir.1980) (quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure*, § 1368, at 690 (1969) (footnotes omitted)).

Because plaintiffs presented materials outside the pleadings to this court for its consideration, these motions will be converted into motions for summary judgment in accordance with Federal Rule of Civil Procedure 12(c). *See Miskovsky v. United States*, 414 F.2d 954, 955 (3rd Cir.1969). However, the standard of review for a motion for summary judgment does not differ from that for a motion for judgment on the pleadings.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted:

if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

*Id.*

On a motion for summary judgment, the moving party must demonstrate the absence of an issue of material fact and its entitlement to judgment as a matter of law. Fed.R.Civ.P. 56(c). In this case, the facts are not disputed. Consequently, the court need only address the issues of law presented to determine which party is entitled to judgment as a matter of law.

## C. *The Due Process Clause of the Fourteenth Amendment*

 Plaintiffs claim that the FAS violates their substantive and procedural due process rights under the fourteenth amendment. Plaintiffs argue that the compulsory arbitration procedure, with its stay of pending court actions and lack of provision for appeal to a court of law, violates their fundamental right of access to a court of law.

But "[d]ue process is not necessarily judicial process." *Reetz v. Michigan,* 188 U.S. 505, 507, 23 S.Ct. 390, 391, 47 L.Ed. 563 (1903). The due process clause of the fourteenth amendment does not guarantee a trial to a litigant. No court has interpreted the fourteenth amendment to include a fundamental right to a trial. As the Supreme Court noted in *Reetz,* "[n]o provision in the Federal Constitution ... forbids a state from granting to a tribunal, whether called a court or a board of registration, the final determination of a legal question." *Id.* The Court continued, "[n]either is the right of appeal essential to due process of law." *Id.* at 508, 23 S.Ct. at 392.

 The due process clause of the fourteenth amendment requires notice and an opportunity to be heard before an impartial observer, and provides the right to confront and cross-examine witnesses prior to the deprivation of a life, liberty or property interest. *Goldberg v. Kelly,* 397 U.S. 254, 267–68, 90 S.Ct. 1011, 1020, 25 L.Ed.2d 287 (1970). In examining whether the existing procedure is sufficient, the court must evaluate the private interest which is affected, the probable value of additional or substitute procedural safeguards in protecting against accidental deprivation of that interest, and the public interest, including a review of the administrative and fiscal burden that the additional procedure would entail. *Mathews v. Eldridge,* 424 U.S. 319, 334–35, 96 S.Ct. 893, 902–03, 47 L.Ed.2d 18 (1976).

The private interest in this case, the attorneys' fee, is a significant "property" interest from the plaintiffs' point of view, because it provides the means by which they live and are able to conduct their practice.

The existing procedure for fee arbitration provides notice and a hearing before a Committee of attorneys and laymen. It also provides an opportunity to compel the attendance of witnesses and the production of documents through the use of subpoenas. N.J.Ct.R. 1:20A–3(b).

The plaintiffs claim that the inability to perform discovery and the failure to follow the rules of civil procedure and evidence in the FAS deprives them of their procedural due process rights. Yet the need for discovery should be minimal because the information required to establish the plaintiffs' entitlement to the fee sought should be within the plaintiffs' own records, not those of the client. As stated in *Kelley Drye & Warren v. Murray Indus.,* 623 F.Supp. 522, 528 (D.N.J.1985), "[d]epositions and extensive pretrial proceedings are precisely what the arbitration procedure is designed to avoid."

The fact that the majority of the Committee members are "trained in the rules of evidence and skilled in distinguishing competent from incompetent evidence and able to impartially judge facts presented at the hearing" alleviates evidentiary concerns. *In re Logan,* 70 N.J. 222, 228, 358 A.2d 787, 791 (1976). Further, both the plaintiff and defendant are allowed to have counsel present during the Committee hearing, and

the hearings are to be "conducted formally," although it is not necessary to adhere to the rules of evidence and procedure. N.J.Ct.R. 1:20A–3(b). Finally, the findings of the arbitration committee and the reasons in support of those findings are to be recorded. *Id.*

In sum, the existing procedural protections accorded the plaintiffs in the FAS are sufficient. Allowing an appeal of Committee decisions to the courts would significantly increase the burden on the judicial system. "[T]he advantages of swift, inexpensive proceedings outweigh by far any greater likelihood of just results achieved by allowing appellate proceedings. The loss of public confidence is too high a price to pay for some indeterminate improvement in the quality of fee arbitration determinations." *LiVolsi,* 85 N.J. at 603, 428 A.2d at 1282. In addition, forcing clients to resolve fee disputes by going to court places a heavy burden on the client. *Id.* at 599, 428 A.2d 1268.

Accordingly, this court finds that the New Jersey Fee Arbitration System comports with the mandates of due process. There is no fundamental right to have a trial under the fourteenth amendment, and sufficient procedural safeguards exist to ensure that plaintiffs' rights are protected.

D. *The Equal Protection Clause*

The plaintiffs allege that the unilateral and compulsory nature of the FAS classifies attorneys and discriminates against attorneys in violation of equal protection.

There are three standards of judicial review for alleged equal protection violations, and the standard to be applied depends upon the basis used for the classification.

Courts review state classifications based on "suspect" traits, such as race or national origin, under the "strict scrutiny" standard. In order to survive this standard, the classification must be narrowly tailored to the achievement of a compelling state interest. *See Regents of the Univ. of California v. Bakke,* 438 U.S. 265, 320, 98 S.Ct. 2733, 2763, 57 L.Ed.2d 750 (1978) (enrollment quotas based on race at state funded university violated equal protection because they were not necessary to promote substantial state interest).

Classifications that deprive a person of a fundamental right also receive strict scrutiny. *See Loving v. Virginia,* 388 U.S. 1, 9–11, 87 S.Ct. 1817, 1822–23, 18 L.Ed.2d 1010 (1967) (statute prohibiting interracial marriage received strict scrutiny because it distinguished on basis of race and because it infringed upon fundamental right to marry).

"Quasi-suspect" classifications, such as those based on gender or illegitimacy, receive "middle level scrutiny." This test requires the state law to be substantially related to an important state interest. *See Mississippi Univ. for Women v. Hogan,* 458 U.S. 718, 723–24, 102 S.Ct. 3331, 3335–36, 73 L.Ed.2d 1090 (1982) (gender-based segregation at women-only state-funded university received middle level scrutiny).

The "rational basis test" requires that the classification be rationally related to the achievement of a legitimate state interest. *See Williamson v. Lee Optical of Oklahoma,* 348 U.S. 483, 491, 75 S.Ct. 461, 466, 99 L.Ed. 563 (1955) (statute barring optician from issuing eyeglasses without written prescription from licensed ophthalmologist is rationally related to state's interest in protecting health of its citizens).

Because attorneys are not a "suspect class," and because the deprivation of a fundamental right is not involved, the "strict scrutiny" standard is not applicable. Because there is no classification based on gender or illegitimacy, "middle level scrutiny" is also inapplicable.

Therefore, the FAS must withstand the "rational basis" test in order to be held constitutional. The Supreme Court has recognized the interest of a state in regulating the legal profession and the attorney-client relationship to be a "compelling" one. *Goldfarb v. Virginia State Bar,* 421 U.S. 773, 792, 95 S.Ct. 2004, 2015, 44 L.Ed.2d 572 (1975). A "compelling" state interest meets and surpasses the requirements of the rational basis test, which requires only a "legitimate" interest. Fur-

ther, this court finds the maintenance of public confidence in the judicial system to be a legitimate state interest. *See also LiVolsi*, 85 N.J. at 586, 428 A.2d at 1273. Requiring attorneys to justify their fees in an inexpensive forum before an impartial panel is rationally related to the maintenance of the public's confidence in the legal system and to the interest in minimizing the burden on both the client and the attorney. In addition, the arbitration process is apt to result in a much quicker determination than the overburdened court system can provide, allowing the attorneys to recover their fees sooner than if an action was brought in court.

Accordingly, this court finds that the New Jersey attorney Fee Arbitration System is rationally related to a legitimate state interest; therefore, the arbitration system does not violate the equal protection clause of the fourteenth amendment.

### E. *The Contract Clause*

██ Plaintiffs argue that the deprivation of a contractual right to sue in court for the value of services rendered amounts to an impairment of a private contract in violation of the contract clause. The contract clause provides that "[n]o State shall ... pass any ... Law impairing the Obligation of Contracts." U.S. Const., art. I, § 10, cl. 1.

Plaintiffs rely on the analysis of the United States Supreme Court in *United States Trust Company v. New Jersey*, 431 U.S. 1, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977), in support of their position. In *United States Trust*, legislation passed by New York and New Jersey repealed a covenant entered into by the two states. *Id.* at 3, 97 S.Ct. at 1508. The covenant had limited the New York Port Authority's power to subsidize passenger rail service with revenues from reserves pledged as security for bonds offered by the port authority. *Id.* The Trust Company, as trustee and bondholder, sued for declaratory relief, alleging that the impairment of the bondholder's security amounted to an impairment of contract in violation of the contract clause. *Id.* The Supreme Court held that when a

state is a party to a contract and acts to impair that contract, the impairment will be upheld only if the impairment is reasonable and necessary to serve an important public interest and if there is no other means of achieving the state's goal. *Id.* at 29–30, 97 S.Ct. at 1521. The court finds the *United States Trust* analysis inapplicable here, because the state is not a party to the contract at issue: the agreement between the attorney and the client.

Instead, this court finds the tripartite analysis for impairment of contracts entered into by private parties established by the Supreme Court in *Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 103 S.Ct. 697, 74 L.Ed.2d 569 (1983), to be controlling. The three-part test in *Energy Reserves* requires (1) a substantial impairment of the contractual relationship, (2) that is justified by a significant and legitimate public purpose, and (3) is based on "'reasonable conditions and [is] of a character appropriate to the public purpose justifying [the legislation's] adoption.'" *Id.* at 411–12, 103 S.Ct. at 704–05.

First, the impairment alleged by the plaintiffs is not substantial because it does not change the terms of the contract. Rather, it dictates the forum in which disputes regarding the attorney's fee may be adjudicated, if the client so chooses. Plaintiffs have not demonstrated that the imposition of an arbitration committee for attorney fee disputes results in significant changes in the fees charged the clients. The allegation that "[a]mong members of the bar, there is a widely held perception that Fee Arbitration Committees typically compromise lawyers' bills" is insufficient. Plaintiffs' Brief at 24, n. 5.

Second, notwithstanding the insubstantial impairment of contract, this court finds the FAS to be justified by a significant and legitimate public purpose: the maintenance of public confidence in the New Jersey judicial system. By providing an inexpensive forum in which to resolve attorney fee disputes, that end is served. The New Jersey Supreme Court in *LiVolsi* fully endorsed American Bar Association reports indicating that forcing clients to go to court

to resolve fee disputes placed a heavy burden on the clients. *LiVolsi*, 85 N.J. at 599, 428 A.2d at 1279–80 (citing ABA, Report of the Special Committee on Resolution of Fee Disputes 2–4 (1974)). The Supreme Court also rejected the idea that noncompulsory attorney arbitration would be as effective as compulsory arbitration, noting that "[n]ational surveys demonstrate that a significant and growing number of attorneys refuse to arbitrate their fee disputes." *LiVolsi*, 85 N.J. at 599, 428 A.2d at 1280.

Third, in determining whether the impairment is reasonable and appropriate to serve an important public purpose when the state is not a contracting party, "courts properly defer to legislative judgment as to the necessity and reasonableness of a particular measure." *Energy Reserves*, 459 U.S. at 412–13, 103 S.Ct. at 705. Given the quasi-legislative power to "formulate court rules and policy" granted to the New Jersey Supreme Court in the state constitution, deference to the necessity and reasonableness of the FAS is appropriate under ·*Energy Reserves*. N.J. Const., art 6, § 2.

Accordingly, this court finds the Fee Arbitration System to be a reasonable and necessary exercise of the power of the New Jersey Supreme Court to regulate the practice of law in New Jersey, and that the system does not violate the contract clause of the United States Constitution.

### F. *The Right to a Jury Trial*

■ Plaintiffs allege that the compulsory arbitration system deprives them of their right to a jury trial pursuant to the seventh amendment of the United States Constitution.

In *Kelley Drye*, the court addressed the issue of whether the compulsory arbitration system infringed upon seventh amendment rights and held that it did not. 623 F.Supp. 522, 526–27 (D.N.J.1985). The court concluded that the privilege of practicing law in New Jersey subjected an attorney to the imposition of reasonable conditions and limitations, including the forfeiture of the right to a jury trial if the client elects to arbitrate a fee dispute. *Id.* This court finds no merit to plaintiffs' argument

that it must retreat from the position taken in that case.

### G. *Involuntary Servitude*

■ Plaintiffs allege that the FAS reduces honest lawyers to compulsory involuntary service. At the very least, it leaves lawyers ethically obligated to represent their clients to the fullest extent, then steals from them the legal protections necessary to collect a reasonable fee.

There is no secret about the fact that fee arbitration committees frequently issue decisions reducing lawyer's fees or altogether eradicating them. This trend results in compulsory, involuntary service ... as proscribed by the Thirteenth Amendment.

Plaintiffs' Brief at 50–51.

The court finds the involuntary servitude argument to be without merit. First, the plaintiffs voluntarily undertook the task of representing Ms. Kiefer in her divorce action. Nothing in their brief indicates otherwise. Second, the plaintiffs voluntarily sought entry into the practice of law in New Jersey, an act that requires submission to the rules and regulations promulgated by the New Jersey Supreme Court.

Every attorney authorized to practice law in the State of New Jersey ... shall be subject to the disciplinary jurisdiction of the Supreme Court....

N.J.Ct.R. 1:20A–1(a).

Third, plaintiffs do not provide any evidence to justify their sweeping condemnation of the Fee Arbitration Committees. Plaintiffs do not purport to prove that the Committees forgive all of the debt owed by the client to the attorney. Attorneys do receive compensation for their efforts under this system, and plaintiffs do not claim otherwise. Further, in *LiVolsi*, the New Jersey Supreme Court concluded that there was no evidence that the arbitration system caused significant hardship for lawyers. 85 N.J. at 600–01, 428 A.2d at 1280.

Therefore, this court finds that the argument that the New Jersey Fee Arbitration System places the plaintiffs in involuntary

servitude in violation of the thirteenth amendment is without merit.

### H. *Federal Antitrust Claims*

 Plaintiffs allege that, by allowing price fixing and the determination of fair fees for legal services in restraint of trade, the attorney FAS violates the Sherman Act, 15 U.S.C.A. §§ 1–7 (West 1973 & Supp.1990).

In *Parker v. Brown*, 317 U.S. 341, 351, 63 S.Ct. 307, 313, 87 L.Ed. 315 (1943), the Supreme Court held that the Sherman Act was not "intended to restrain state action or official action directed by a state." Instead, the law was only intended to prohibit private parties from engaging in restraints of trade. *Id.* In *Parker*, the state actively participated in the creation and enforcement of a program to develop marketing policies for the raisin crop. *Id.* at 352, 63 S.Ct. at 314. The Court concluded that no violation of federal antitrust law had occurred in *Parker* and noted that the state, as sovereign, had imposed the restraint of trade as an act of government. *Id.*

The Supreme Court refined the "state action" exemption to the Sherman Act in *California Retail Liquor Dealers Ass'n v. Midcal Aluminum*, 445 U.S. 97, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980). In *Midcal*, the California state liquor price control system allowed the producers of wine to dictate the wholesale prices of wine to wholesalers. *Id.* at 99, 100 S.Ct. at 940. The state system authorized the producers to set prices and provided the enforcement mechanism in the event of violation, but the state did not actively participate in the setting of the wine prices. *Id.* at 99–100, 100 S.Ct. at 940. The actual prices were dictated to the wholesalers by the individual wine producers, not by the state. *Id.* at 103, 100 S.Ct. at 942.

The Court established a two-part test for determining whether parties are exempt from the antitrust laws when they engage in anticompetitive conduct. The anticompetitive conduct must be pursuant to a " 'clearly articulated and affirmatively expressed ... state policy,' " and the policy must be " 'actively supervised' " by the state. *Id.* at 105, 100 S.Ct. at 943 (citing *City of Lafayette v. Louisiana Power & Light Co.*, 435 U.S. 389, 410, 98 S.Ct. 1123, 1135, 55 L.Ed.2d 364 (1978)); *see also Goldfarb v. Virginia State Bar*, 421 U.S. 773, 791, 95 S.Ct. 2004, 2015, 44 L.Ed.2d 572 (1975) ("It is not enough that ... anti-competitive conduct is 'prompted' by state action; rather, anti-competitive activities must be compelled by direction of the State acting as a sovereign."). The Court in *Midcal* concluded that where the anticompetitive conduct was performed by private parties, active state supervision was required in order to have the state action exemption apply. 445 U.S. at 106, 100 S.Ct. at 943.

Plaintiffs' reliance on *Midcal* is misplaced, because the New Jersey FAS does not allow private parties to set the fees which attorneys may charge their clients. The Fee Arbitration Committees, appointed by the New Jersey Supreme Court pursuant to its constitutional power to regulate the practice of law in New Jersey, are not private parties, but are an extension of the New Jersey Supreme Court. As such, the Committees act in their official capacity to regulate the practice of law in New Jersey by providing a forum for the resolution of attorney fee disputes. The New Jersey Supreme Court appoints the members of the Committees and dictates the rules and regulations by which the Committees operate. Additionally, the arbitration committees are acting pursuant to the New Jersey Supreme Court's policy of maintaining the public's confidence in the state judicial system. *LiVolsi*, 85 N.J. at 604, 428 A.2d at 1282. Therefore, because the state is actively involved, and because there are no private parties engaged in price fixing, the *Midcal* test is not applicable.

In dicta, the Supreme Court noted in *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 46 n. 10, 105 S.Ct. 1713, 1720 n. 10, 85 L.Ed.2d 24 (1985), that "[i]n cases in which the actor is a state agency, it is likely that active state supervision would also not be required." In *Hallie*, the Court held that active state supervision is not a requirement for exemption from federal

antitrust laws where the actor is a municipality, rather than a state agency. *Id.* at 46, 105 S.Ct. at 1720. Although this court would be inclined to follow *Hallie* and hold that active state supervision is unnecessary when the actor is a state agency, it need not do so here because there is sufficient state supervision for the FAS to fall within the "state action" exemption to the antitrust laws.

The Fee Arbitration Committee operates as a state agency under the supervision and appointment of the New Jersey Supreme Court. Accordingly, this court finds sufficient state "supervision" to hold that the state exemption to the federal antitrust laws enunciated in *Parker v. Brown* applies.

### I. *Conclusion*

Consequently, the New Jersey Fee Arbitration System does not violate federal antitrust law; nor does it infringe upon the rights granted to the plaintiffs under the fourteenth, seventh and thirteenth amendments and article 1, section 1, of the United States Constitution.

For these reasons, defendants' motion for summary judgment is granted. Plaintiffs' cross-motion for summary judgment is denied. No costs.